# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. |
| v. | )    7:23-cr-23-ACA-SGC |
| | ) |
| DARTERRIUS DEWAYNE WASHINGTON | ) |

## PLEA AGREEMENT

The Government and the defendant, **Darterrius Dewayne Washington**, hereby acknowledge the following plea agreement in this case:

## PLEA

The defendant agrees to (i) plead guilty to Counts **ONE, TWO, and THREE** of the Indictment filed in the above-numbered and -captioned matter; and (ii) waive certain rights to direct appeal and collateral attack as outlined in section **IV** of this agreement. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agrees to recommend the disposition specified below, subject to the conditions in section **VII.**

Defendant's Initials 

## TERMS OF THE AGREEMENT

I. **MAXIMUM PUNISHMENT**

The defendant understands that the maximum statutory punishment that may be imposed for *Unlawful Possession of a Machinegun*, in violation of Title 18, United States Code, Section 922(o)(1) as charged in **COUNT ONE**, is:

    A.    Imprisonment for not more than 10 years;

    B.    A fine of not more than $250,000 or,

    C.    Both A and B;

    D.    Supervised release of not more than 3 years; and

    E.    A special assessment of $100.

The defendant understands that the maximum statutory punishment that may be imposed for *Engaging in the Business of Dealing in Firearms without a License*, in violation of Title 18, United States Code, Section 922(a)(1)(A) as charged in **COUNT TWO**, is:

    F.    Imprisonment for not more than 5 years;

    G.    A fine of not more than $250,000 or,

    H.    Both A and B;

    I.    Supervised release of not more than 3 years; and

    J.    A special assessment of $100.

Defendant's Initials DW

The defendant understands that the maximum statutory punishment that may be imposed for ***Making a Firearm in Violation of the National Firearms Act (NFA)***, in violation of Title 26, United States Code, Section 5861(f) as charged in **COUNT THREE**, is:

A. Imprisonment for not more than 10 years;

B. A fine of not more than $250,000 or,

C. Both A and B;

D. Supervised release of not more than 3 years; and

E. A special assessment of $100.

## II. FACTUAL BASIS FOR PLEA

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

On August 29, 2022, ATF SA Dan Bietz (assigned to California) saw a seller advertising 3D printed machinegun conversion devices (MCDs) on the social media application TikTok under the username "@SinncityDee." The advertisement directed potential customers to contact the seller on "tele shiesty2000" (telegram account "shiesty2000"). SA Bietz recorded several of "@SinncityDee" video posts on TikTok, which appeared to be filmed indoors and showcased a white AR-15 lower with a yellow MCD attached, a black 3D printed Glock type frame, and several

yellow Glock switch MCDs. A computer and 3D printer appeared in the background of several videos. ATF was able to identify the seller as Darterrius Washington.

On August 29, 2022, SA Bietz, working in an undercover capacity, contacted Washington via Telegram and requested proof that the 3D printed MCDs worked. Washington replied by sending SA Bietz a video of someone shooting a Glock style machinegun with a yellow switch, similar in design and color to the ones in his TikTok videos. During the conversation, Washington revealed that he makes MCDs and firearm frames, and he sells them "1 for $60, 3 for $120." Washington stated he uses a fake name and requests payment through CashApp.

SA Bietz asked Washington to prove ownership of the MCD by writing "pownership" on a piece of paper next to the MCD. Washington sent a picture of a black MCD next to the word "pownership" written on a USPS envelope. Washington indicated that shipping would only take a few days through the United States Postal Service.

On October 5, 2022, SA Bietz, still acting in an undercover capacity, contacted Washington via Telegram and arranged to purchase one AR-style MCD and one Glock-style MCD. SA Bietz transferred $120 in government funds to Washington's CashApp account for these items. While SA Bietz was communicating with Washington, ATF agents conducted surveillance of Washington as he traveled from his residence (11475 Mount Moriah Road, Woodstock, Alabama) to the U.S. Post

Office in Vance, Alabama. SA Bietz received a message from Washington, saying "Post Office," followed by another message with a tracking number.

ATF researched the tracking number that Washington provided through USPS package tracking system and learned that the package was in transit from Vance, Alabama, to the undercover address provided by SA Bietz. SA Bietz received the package on October 11, 2022. The package contained one AR-style MCD and one Glock- style MCD.

On October 13, 2022, ATF SA's located additional social media accounts linked to Washington. His Facebook profile showed him advertising several firearm frames, which SAs believed to be 3D printed. Some of the frames were equipped with what appeared to be a 3D printed MCD. His Instagram account contained two videos of someone shooting a pistol with a MCD attached. One of the individuals in the recording was wearing the same hooded sweatshirt that was worn by Washington on October 5, 2022, at the Post Office in Vance, Alabama. SAs believe that both videos were filmed at Washington's residence based on their observations during the surveillance of his residence. On October 17, 2022, ATF Agents obtained search warrants for Washington's residence and vehicle.

ATF's Firearms Technology Branch examined the two 3D printed MCDs that Washington sold to SA Bietz on October 5 and determined that the Glock-style MCD, commonly referred to as a "Glock Switch," is "a combination of parts

designed and intended for use in converting a weapon into a machinegun." The AR-type MCD, commonly referred to as a "Swift Link," "is a part designed and intended solely and exclusively for use in converting a weapon into a machinegun." When test fired on a Glock 9mm pistol and an AR-type rifle, respectively, both shot "automatically more than one shot, without manual reloading, by a single function of the trigger." Therefore, both items are "machineguns" as defined by Titles 26 and 18. Because both are "machineguns," they are also "firearms," as defined by Title 26. Neither device bears manufacturer's markings of identification or serial numbers as required by Title 26.

On October 25, 2022, SA Bietz, still acting in his undercover capacity, purchased four AR-style MCDs, three Glock-style MCDs and two 3D printed Glock style pistol frames for $350 total. Prior to sending the money to Washington, Washington provided SA Bietz a 3-second video that showed three 3D printed Glock Switches and four AR-style MCDs. After payment, Washington sent SA Bietz a picture of the USPS package bearing the UC address.

Later that same day, law enforcement arrested Washington at the U.S. Post Office in Vance, Alabama, for an outstanding warrant out of Tuscaloosa after he mailed the UC package. USPI Verhine retrieved two packages he observed Washington mail prior to his arrest, along with the shipping receipt. Agents also seized Washington's personal items he had on him, including his iPhone.

Officers transported Washington to TPD where he was interviewed post-*Miranda*. Washington admitted to sending the two packages on October 25 and explained how he learned how to use 3D printers, when/where he purchased his 3D printers, how he obtained the files to print various firearms and parts, the process of 3D printing, the pricing for the items he printed, and that he did not put any identification/serial numbers on the items he made. He stated that he did not have a FFL but made over $2,000 in September, alone, from making/selling his 3D printed firearm parts. Washington said the "AR" MCDs were "completely legal" and that the Glock MCDs he made are used to convert a Glock pistol into a machinegun. He also confirmed he was the individual shooting the firearms in the videos on his social media accounts that show the MCDs converting a Glock to fully automatic. Therefore, he was aware that the devices he was making actually converted a semiautomatic weapon into an automatic weapon/machinegun.

After interviewing Washington, ATF executed the vehicle and residential search warrants. Agents located and seized, among other items, a second iPhone described by Washington during his interview, a 3D printer, a laptop, USPS shipping materials, 3D printed firearm frames, two Glock pistols, ammunition, 3D printing materials and tools, shipping receipts, and magazines.

During the execution of the search warrants for Washington's cell phones, ATF found thousands of photos, videos, messages, and other evidence showing that

Washington has been making 3D printed MCDs and selling them on the internet and social media apps as far back as April 1, 2022.

The Firearms Technology Branch examined the seven MCDs from the October 25 controlled buy. Firearms Enforcement Officers made similar findings to the October 5 MCDs and concluded that each of the seven MCDs Washington sent to SA Bietz was both a "firearm," as defined by 26 U.S.C. § 5845, and a "machinegun," as defined in 26 U.S.C. § 5845 and 18 U.S.C. § 921(a)(24).

The parties to this Agreement agree and stipulate that 3-7 "firearms" may be used in calculating Washington's adjusted offense level under the U.S. Sentencing Guidelines.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

_____
DARTERRIUS DEWAYNE WASHINGTON

### III.     RECOMMENDED SENTENCE

Subject to the limitations in section **VII** regarding subsequent conduct and pursuant to Fed. R. Crim. P. 11(c)(1)(B), the Government will recommend the following disposition:

   A.   That the defendant be awarded a two (2) level reduction in the

defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct. The Government agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the defendant's prompt notification to the Government of the intention to enter a plea of guilty. The Government may oppose any adjustment for acceptance of responsibility if the defendant: (1) fails to admit each and every item in the factual stipulation; (2) denies involvement in the offense; (3) gives conflicting statements about the defendant's involvement in the offense; (4) is untruthful with the Court, the Government, or the United States Probation Officer; (5) obstructs or attempts to obstruct justice prior to sentencing; (6) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (7) attempts to withdraw the defendant's plea of guilty for any reason other than those expressly enumerated in the "Waiver of Right to Appeal and Post-Conviction Relief" section of this Plea Agreement;

B. That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent with the **LOW END** of the advisory United States Sentencing Guideline range as calculated by the Court at the time of sentencing;

C. That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the Court, subject to the Court's standard conditions of supervised release;

D. That the defendant be required to pay a fine in accordance with the sentencing guidelines should the Court determine that the defendant has the ability to pay a fine, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release;

E. That the defendant be required to comply with the forfeiture provisions set forth in section XII of this agreement; and

F. That the defendant pay a special assessment of $300, said amount due and owing as of the date sentence is pronounced.

## IV. WAIVERS

### A. STATUTE OF LIMITATIONS WAIVER

In consideration of the recommended disposition of this case, I, **DARTERRIUS DEWAYNE WASHINGTON**, hereby understand, acknowledge, and agree that if this plea agreement is set aside for any reason, I will not assert any defense based on any applicable statute of limitations or the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, that includes the passage of time from and including the date of this plea agreement until and including the date of entry of any order setting this plea agreement aside.

### B. RIGHT TO APPEAL AND POST-CONVICTION RELIEF

In consideration of the recommended disposition of this case, I, **DARTERRIUS DEWAYNE WASHINGTON**, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the statute(s) to

which I am pleading guilty is or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute(s).

The defendant reserves the right to contest in an appeal or post-conviction proceeding(s) the following:

1. Any sentence imposed in excess of the applicable statutory maximum sentence(s);

2. Any sentence imposed in excess of the Guidelines range determined by the Court at the time sentence is imposed; and

3. Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the United States Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the Government retains its right to appeal where authorized by statute.

I, DARTERRIUS DEWAYNE WASHINGTON, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

_____
DARTERRIUS DEWAYNE WASHINGTON

## V.     UNITED STATES SENTENCING GUIDELINES

The defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in *United States v. Booker*, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the Court's discretion and is not required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI.    AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the Government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the Government's recommendation. Further, the defendant understands that if the Court does not accept the Government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII.   VOIDING OF AGREEMENT

The defendant understands that if the defendant (a) violates any federal, state, or local law or any condition of pretrial release after entering into this plea agreement, (b) moves the Court to accept a plea of guilty in accordance with, or pursuant to, the provisions of *North Carolina v. Alford*, 400 U.S. 25 (1970),

(c) tenders a plea of *nolo contendere* to the charges, (d) violates any other term of this plea agreement, and/or (e) does or says anything that is inconsistent with the acceptance of responsibility, the plea agreement will become NULL and VOID at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein. Further, such election will not entitle the defendant to withdraw a previously entered plea.

## VIII.   OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## IX.   COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to:

- fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party;

- promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs;

- identify all assets over which the defendant exercises or exercised control,

    directly or indirectly, within the past five years, or in which the defendant has or had during that time any financial interest;

- take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant;

- undergo any polygraph examination the Government may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years.

    The defendant further agrees that the above information, as well as any of the defendant's financial statements and disclosures, will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

## X. AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

    As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct.

Defendant's Initials _DW_

This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors, which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any and waives objection to the inclusion of that restitution in any order issued by the Court.

**XI.    TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS**

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to the defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

**XII.    FORFEITURE**

The defendant agrees to take all steps as requested by the Government to pass clear title to forfeitable assets to the Government, and to testify truthfully in any judicial forfeiture proceeding. The defendant hereby waives the requirements of Fed. R. Crim. P. 32.2 regarding notice of the forfeiture in the Indictment, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant also waives the requirements of Fed. R. Crim. P. 43(a)

with respect to the imposition of any forfeiture sanction carried out in accordance with this plea agreement. The defendant acknowledges that the defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Fed. R. Crim. P. 11(b)(1)(J), at the time the defendant's guilty plea is accepted.

The defendant further waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including any Double Jeopardy challenges that the defendant may have to the entry of a Forfeiture Order before sentencing, and any claims, defenses or challenges arising under the Excessive Fines Clause of the Eighth Amendment resulting from the forfeiture imposed as a result of this Indictment and/or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture.

### Non-Abatement of Criminal Forfeiture

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be

determined as if the defendant had survived, and that determination shall be binding upon the defendant's heirs, successors, and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full. To the extent that forfeiture pursuant to this agreement requires the defendant to disgorge wrongfully obtained criminal proceeds for the benefit of the defendant's victims, the defendant agrees that the forfeiture is primarily remedial in nature.

### XIII. IMMIGRATION STATUS

The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. The defendant's guilty plea and conviction make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States if the defendant is not a citizen of the United States. Removal and other immigration consequences are the subject of a separate proceeding, however; and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Understanding all of this, the defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

Defendant's Initials DW

XIV. DEFENDANT'S ACKNOWLEDGEMENT

I have read and understand the provisions of this plea agreement consisting of **19** pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence on my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

> **NO PROMISES OR REPRESENTATIONS OTHER THAN THOSE IN THE AGREEMENT HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

_____ None _____

I understand that this plea agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this plea agreement and have signed the signature line below to indicate that I have read,

understand, and approve all of the provisions of this plea agreement, both individually and as a total binding agreement.

3/22/23
DATE

_Darterrius Washington_
**DARTERRIUS DEWAYNE WASHINGTON**
Defendant

XV. **COUNSEL'S ACKNOWLEDGMENT**

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me that my client understands this plea agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea agreement on the terms and conditions set forth herein.

3-22-23
DATE

**KEVIN ROBERTS, esq.**
Defendant's Counsel

XVI. **GOVERNMENT'S ACKNOWLEDGMENT**

I have reviewed this matter and this plea agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

PRIM F. ESCALONA
United States Attorney

3/15/23
DATE

_Brittney L. Plyler_
**BRITTNEY L. PLYLER**
Assistant United States Attorney